KAMALA D. HARRIS
Attorney General of California
JOYCE E. HEE
Supervising Deputy Attorney General
DAVID LEW
Deputy Attorney General
State Bar No. 77186
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA 94612-0550
  Telephone: (510) 622-2225
  Fax: (510) 622-2270
  E-mail: David.Lew@doj.ca.gov
*Attorneys for Creditor California Franchise Tax Board*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **In Re:**<br><br>**GREGORY THOMAS MALLEY and VANISRI MALLEY,**<br><br>                            Debtors. | Case No. 10-59336 ASW<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF CALIFORNIA FRANCHISE TAX BOARD FOR ORDER DEEMING CLAIM 16-3 TIMELY FILED**<br><br>Date:      July 22, 2014<br>Time:     2:15 p.m.<br>Dept:     3020<br>Judge:    Hon. Arthur S. Weissbrodt |

## INTRODUCTION

Creditor California Franchise Tax Board ("FTB") submits this memorandum of points and authorities in support of its Motion for Order Deeming Claim 16-3 Timely Filed. FTB contends that the requested relief is warranted on the grounds of excusable neglect.

## STATEMENT OF FACTS

The debtors filed a voluntary Chapter 11 bankruptcy petition on September 7, 2010 (the "Petition Date"), thereby commencing the above-captioned case.

On the same date, the debtors filed their schedules and signed the same, stating: "I declare under penalty of perjury that I have read the foregoing . . . schedules . . .and that they are true and correct to the best of my knowledge, information, and belief." In Schedules E and F, the debtors were required to list all of their priority and non-priority unsecured creditors and state whether such claims were contingent, unliquidated or disputed. The only claim listed for FTB was a claim for the 2008 tax year in the amount of $6,287, which was listed in Schedule E.

On September 8, 2010, the Court mailed out a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines, setting the governmental bar date for filing a claim against the debtors' estate at March 6, 2011 (the "Bar Date").

On October 8, 2010, FTB timely filed Claim 16-1 in the total amount of $3,071.01 for the 2008 and 2009 tax years.

On November 2, 2010, FTB filed Claim 16-2, which amended Claim 16-1, in the total amount of $3,057.33, consisting of a priority claim in the amount of $2,127.21 and a general unsecured claim in the amount of $930.12 for the 2008 and 2009 tax years. FTB reduced its claim, in part, based on the debtors' filing of their California income tax return for the 2009 tax year.

On September 19, 2011, FTB sent the debtors two notices of proposed assessment stating that FTB was proposing to assess deficiencies pursuant to which the debtors would owe FTB (1) additional tax in the amount of $103,497, penalties in the amount of $20,699.40 and interest from April 15, 2005 to January 31, 2011 in the amount of $50,838.43 for the 2004 tax year; and (2) additional tax in the amount of $3,711 and interest from April 15, 2006 to January 31, 2011 in the

1

Memo of P & A in Support of Motion for Order Deeming Claim 16-3 Timely Filed (Case No. 10-59336 ASW)

Case: 10-59336   Doc# 241   Filed: 06/06/14   Entered: 06/06/14 15:21:14   Page 2 of 11

amount of $1,278.95 for the 2005 tax year. These notices were based on federal changes or corrections to the debtors' income that had a final federal determination date of October 23, 2009. The Internal Revenue Service ("IRS") notified FTB of these changes or corrections for the first time on February 10, 2010. The debtors did not notify FTB of these changes or corrections, although they were required to do so within six months after the final federal determination date under California Revenue and Taxation Code §18622(a). The notice of proposed assessment for the 2004 tax year stated that **the debtors underreported their taxable income on their 2004 tax return by $1,112,869**. The notice of proposed assessment for the 2005 tax year stated that **the debtors underreported their taxable income on their 2005 tax return by $103,669**. The debtors did not protest the proposed assessments, and thus, the assessments became final on November 18, 2011. Cal. Rev. & Tax. Code § 19042. The debtors received notice of these tax liabilities on February 23, 2012, February 23, 2013 and March 1, 2014. (Declaration of Sheila Navarrette in Support of California Franchise Tax Board's Opposition to, and Request for Hearing on, Objection to Claim No.16, Franchise Tax Board ("Navarrette Declaration") at ¶ 4.)

As noted above, the debtors failed to list any obligation to FTB in their Schedules related to the 2004 and 2005 tax years. Even after the debtors were informed of the exact amount of these liabilities in the notices of proposed assessment and, even though the debtors do not dispute these liabilities, they did not amend their Schedules to include the noticed liabilities.

FTB's bankruptcy staff did not become aware of the above-referenced noticed liabilities until July 2012, which was after the Bar Date. At that time, bankruptcy staff contacted the debtors' attorney, informing him of the liabilities and asking whether the debtors would include the liabilities in the plan. Although the debtors' attorney indicated he would discuss the matter with the debtors and respond, FTB's records indicate no response from the debtors' attorney. (Navarrette Declaration at ¶ 5.)

Although the debtors filed a disclosure statement and plan on January 17, 2014, the disclosure statement has not yet been approved. In addition, although a hearing on approval of the disclosure statement was set for May 30, 2014, the United States Trustee has objected to such approval.

2
Memo of P. & A. in Support of Motion for Order Deeming Claim 16-3 Timely Filed (Case No. 10-59336 ASW)
Case: 10-59336    Doc# 241    Filed: 06/06/14    Entered: 06/06/14 15:21:14    Page 3 of 11

On March 14, 2014, FTB filed the Claim, which includes the following claims based on the liabilities that were subject to the above-referenced notices of proposed assessment:

(i) A priority claim in the total amount of $143,865.79 for the 2004 and 2005 tax years, which includes only the tax and interest on tax owed related to those tax years, and

(ii) A general unsecured claim in the amount of $28,163.75 for the 2004 tax year.

(Navarrette Declaration at ¶ 6.)

The debtors' proposed plan appears to state that, if FTB's claim related to the 2004 and 2005 tax year is disallowed, FTB will be enjoined from collecting on such claim during the term of the plan. See the debtors' *[Proposed] Combined Plan of Reorganization and Disclosure Statement January 17,* 2014, filed January 17, 2014 (Docket No. 219) (the "Plan") at page 2 ("Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan."), at page 8 ("Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan"), at page 9 ("Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan") and at page 11 ("no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan"). Exhibit 2 to the Plan states that priority creditors would receive $35,400 in a Chapter 7 case.

Beginning on March 17, 2014, FTB counsel contacted the debtors' attorney on various occasions, including, but not limited to, by correspondence dated March 17, 2014, to explain why the Claim should be deemed timely under Rule 9006 of the Federal Rules of Bankruptcy Procedure, and to determine whether, given the circumstances, the debtors would enter into an agreement to that effect. (Declaration of Melody T. Scullary in Support of California Franchise Tax Board's Opposition to, and Request for Hearing on, Objection to Claim No.16, Franchise Tax Board ("Scullary Declaration") at ¶ 2.) On May 19, 2014, the debtors' attorney stated he intended to object to FTB's claim. (*Id.* at ¶ 3.). On May 20, 2014, the debtors filed the Objection.

# ARGUMENT

## THE FILING OF THE CLAIM AFTER THE DEADLINE FOR FILING GOVERNMENTAL CLAIMS WAS DUE TO EXCUSABLE NEGLECT AND SHOULD BE DEEMED TIMELY

**1. The Excusable Neglect Standard.**

In Chapter 11 cases, the court must fix the deadline for filing proofs of claim. F.R.Bankr.P. 3003(c)(3). Under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, the court may extend that deadline upon motion made after the deadline where the failure to file "was the result of excusable neglect." The Supreme Court, in *Pioneer Investment Services, Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993), has declared:

> the [excusable neglect] determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

"This list is not exhaustive." *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1003 (9th Cir. 2006). "No single circumstance in isolation compels a particular result regardless of the other factors." *In re Gordian Medical, Inc.*, 499 B.R. 793, 798 (Bankr. C.D. Cal. 2013).

In considering whether there was prejudice, courts should consider who caused the prejudice. See *In re Zilog, Inc.*, 450 F.3d at 1007 ("In any event, to the extent that ZILOG is prejudiced by its own deficient lawyering, the burden of such errors or malfeasance must be borne by those who caused it, rather than by innocent creditors who were mislead."). The disallowance of a late-filed proof of claim forecloses trial on the merits of the claim, and thus, the decision on whether excusable neglect applies should be liberally construed. See *In re Dix*, 95 B.R. 134, 138 (9th Cir. B.A.P. 1988); *In re Hardy*, 33 B.R. 77, 80 (Bankr. D. Nev. 1983).

> [T]his flexible understanding of "excusable neglect" accords with the policies underlying Chapter 11 and the bankruptcy rules. The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases. The rules' differentiation between Chapter 7 and Chapter 11 filings

4

corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors. . . . In overseeing this latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization.

*Pioneer Investment Services, Co.*, 507 U.S. at 389.

### 2. Excusable Neglect Exists in this Case.

The circumstances relevant to a finding of excusable neglect, as set forth in *Pioneer*, are present in this case.

#### a. The Claim Does Not Substantially Prejudice the Debtors.

Of the $172,049.54 in additional liabilities that are added by the Claim, only the dischargeable amount of $28,163.75 is ultimately affected by the debtors' Objection. As discussed below, the remaining additional liabilities added by the Claim in the amount of $143,865.79 is nondischargeable as a priority debt, which means that the debtors will have to address these liabilities in their bankruptcy plan. Accordingly, the prejudice to the debtors from the untimely filing of the Claim is minimal, at best.

Under bankruptcy law, the priority portion of FTB's claim is not dischargeable. "A discharge under [Bankruptcy Code §] 1141 . . . does not discharge an individual debtor from any debt . . . of the kind and for the periods specified in [Bankruptcy Code §] 507(a)(8) . . . ." 11 U.S.C. §523(a)(1)(A). Taxes of the kind specified in Bankruptcy Code § 507(a)(8)(A)(iii) include

> claims of governmental units, only to the extent that such claims are for . . . a tax on or measured by income . . . for a taxable year ending on or before the date of the filing of the petition . . . other than a tax of a kind specified in [Bankruptcy Code §] 523(a)(1)(B) or 523(a)(1)(C) . . . , not assessed before, but assessable, under applicable law . . . , after, the commencement of the case . . .

The 2004 and 2005 tax year liabilities meet the requirements of section 507(a)(8)(A)(iii) unless they are of a kind specified in sections §§ 523(a)(1)(B) or 523(a)(1)(C), as demonstrated as follows. First, FTB is a governmental unit. 11 U.S.C. 101(27); Cal. Gov. Code § 15700 ("There is in the state government . . . a Franchise Tax Board"). Second, the subject taxes are for a tax on

5

Memo of P & A in Support of Motion for Order Deeming Claim 16-3 Timely Filed (Case No. 10-59336 ASW)
Case: 10-59336    Doc# 241    Filed: 06/06/14    Entered: 06/06/14 15:21:14    Page 6 of 11

or measured by income. Cal. Rev. & Tax. Code §§ 17001 (Part 10 is the "Personal Income Tax Law"), 17401 (personal income tax is determined by a percentage of taxable income) and 19501 (FTB administers and enforces Part 10 (commencing with Section 17001)). Third, because the taxes relate to the 2004 and 2005 tax years and the bankruptcy petition was filed on September 7, 2010, the taxes are for tax years ending on or before the date of the filing of the petition. Fourth, because the taxes are based on notices of proposed assessment that are not considered assessed until they become final under California law, the 2004 and 2005 taxes were not assessed before the commencement of this case. *Franchise Tax Board v. Bracey (In re Bracey)*, 77 F.3d 294, 295 (9th Cir. 1996); *King v. Franchise Tax Board (In re King)*, 961 F. 2d 1423, 1427 (9th Cir. 1992) ("a tax assessment . . . cannot occur before it is final.") Here, the debtors did not protest the notices of proposed assessment. Thus, the assessments became final by operation of law on November 18, 2011, which was after the September 7, 2010, filing of the petition in this case. Cal. Rev. & Tax. Code §§ 19041-19042. Accordingly, neither the 2004 tax liability nor the 2005 tax liability was "assessed" before the debtors commenced this case. Fifth and finally, the taxes were assessable after the September 7, 2010 petition date. Because the federal changes or corrections were reported to FTB within six months after the final federal determination date, FTB had two years from the date it was notified of the federal change or correction to issue the notices of proposed assessment (i.e., until February 10, 2012). Cal. Rev. & Tax. Code § 19059(a). Because February 10, 2012 is after the petition date, the taxes were assessable after the commencement of the case.

Thus, the subject taxes are not dischargeable under Bankruptcy Code §§ 507(a)(8)(A)(iii) and 523(a)(1)(A) unless they are of the kind specified in Bankruptcy Code § 523(a)(1)(B) or Bankruptcy Code § 523(a)(1)(C). This Court does not, however, need to decide whether the subject taxes are of the kind specified in section 523(a)(1)(B) or section 523(a)(1)(C). If the taxes are of the kind specified in section 523(a)(1)(B) or section 523(a)(1)(C), then they are nondischargeable under those sections. If they are not of that kind, then they are nondischargeable under Bankruptcy Code §§ 507(a)(8)(A)(iii) and 523(a)(1)(A). In either case, they will not be discharged in this case. Moreover, interest on a tax debt that is nondischargeable

6

is an integral part of such a debt and, therefore, is also nondischargeable. *Ward v. Board of Equalization (In re Artisan Woodworkers)*, 204 F.3d 888, 891-92 (9th Cir. 2000).

In sum, the tax and interest on tax owed related to the 2004 and 2005 tax years, which is FTB's $143,865.79 priority claim related to those tax years, including interest that is accruing on that obligation, will not be discharged by any discharge issued in this case. Any prejudice to the debtors resulting from the late filing of the Claim accrues only from the relatively small amount that is dischargeable in bankruptcy.

As to that small amount, any prejudice to the debtors was the result of their own doing. The tax assessments at issue were the result of the debtors' error and failure to file accurate tax returns, which was later compounded by their decision not to file proper schedules and their refusal to amend those schedules to include the uncontested assessments upon being notified by FTB.

Bankruptcy Code § 521(a)(1)(A) provides that "[t]he debtor shall . . . file . . a list of creditors." Rule 1007(b)(1) of the Federal Rules of Bankruptcy Procedure states that "the debtor shall file the following schedules . . . prepared as prescribed by the appropriate Official Forms, if any: (A) schedules of assets and liabilities . . . ." A debtor has a duty to insure that his schedules are accurate "because of the express duties . . . imposed on him by 11 U.S.C. § 521(1), and because the court and . . . creditors based their actions on the . . . schedules." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 784 (9th Cir. 2001); *United States v. Johnston*, 267 B.R. 717, 723 (N.D. Tex. 2001) ("The debtor's duty to make full disclosure is a continuing one.").

In this case, because the debtors do not dispute FTB's assessments, they bore a legal duty to file their schedules to list FTB as having a priority claim in the amount of $143,865.79 related to the 2004 and 2005 tax years and a general unsecured claim in the amount of $28,163.75 related to the 2004 tax year and to not list such claims as disputed, contingent, or unliquidated. Had they done so, FTB would have had an allowed claim in those amounts for those tax years without the need for FTB to file a proof of claim. 11 U.S.C. § 1111(a) ("A proof of claim is deemed filed under section 501 of this title for any claim . . . that appears in the schedules filed under section

7

521(a)(1) . . . of this title, except a claim . . . that is scheduled as disputed, contingent, or unliquidated.").

In addition, Rule 1009(a) of the Federal Rules of Bankruptcy Procedure states that "[a] . . . schedule . . . may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby." With this rule in mind, the debtors, at the very least, should have amended their schedules shortly after September 19, 2011, when FTB issued its notices of proposed assessment and served that amendment on FTB. This would have resulted in FTB bankruptcy staff contacting the debtors' counsel shortly after September 19, 2011, ten months earlier. To deny the Claim under these circumstances would inequitably permit the debtors to profit from their own willful failure to accurately report their tax liabilities to this Court.

### b. The Length of the Delay Has Not Had a Substantial Impact on Judicial Proceedings.

The delay between the Bar Date and the March 14, 2014 filing of the Claim has not adversely affected the judicial proceedings. The debtors have not filed a plan that can be confirmed over FTB's objection and, therefore, FTB is not in any worse position than if it had timely filed its Claim.

### c. The Reason for the Delay Must be Shared by the Debtors.

Although FTB failed to recognize that it should have filed a proof of claim related to the 2004 and 2005 tax years prior to the Bar Date, FTB did timely inform the debtors of the additional tax liabilities by issuing notices of proposed assessment, which they did not contest. Moreover, in July 2012, FTB informed the debtors' counsel of the Claim, but they did nothing to account for that additional uncontested tax debt in their proposed bankruptcy plan. As a result, under equitable principles, the debtors should not be permitted to benefit from their own intentional failure to include an uncontested tax debt in their bankruptcy plan.

8

Memo of P. & A. in Support of Motion for Order Deeming Claim 16-3 Timely Filed (Case No. 10-59336 ASW)

Case: 10-59336    Doc# 241    Filed: 06/06/14    Entered: 06/06/14 15:21:14    Page 9 of 11

### d. FTB Has Acted in Good Faith.

No evidence exists that FTB did not act in good faith. Once FTB became aware of the additional tax liability owed, debtors' counsel was promptly notified.

In summary, based on the foregoing analysis, and taking into account the Ninth Circuit Bankruptcy Appellate Court's directive in *Dix* that excusable neglect should be liberally construed, equity compels that the Court allow the Claim as timely filed.[1]

### 3. The Proposed Plan Cannot Be Confirmed if an Objection to FTB's Claim is Sustained Based on Untimeliness.

Finally, even if the Court were to sustain an objection to the Claim based on lack of timeliness, the debtors' pending plan could not be confirmed for two reasons. First, the Plan impermissibly enjoins the collection of FTB's nondischargeable claim without providing for full payment of such claim. *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 186-91 (9th Cir. 2003) (when considering a plan that paid a nondischargeable claim in full, but enjoined collection of such claim other than through the plan, "the debtor must demonstrate that the injunction does not prevent, but merely postpones, the creditor's collection of the nondischargeable claim in full pending debtor's performance of the plan."). To remedy this, the

---

[1] FTB filed the Claim on March 14, 2014, as authorized by Bankruptcy Code § 501(a). 11 U.S.C. § 501(a) ("A creditor . . . may file a proof of claim."); *United States v. Towers (In re Pacific Atlantic Trading Co.)*, 33 F.3d 1064, 1066 (9th Cir. 1994) ("Section 501 only provides that a claim 'may be filed' and imposes no time limit or other qualification on the filing of a claim."). Although the Claim was filed after the deadline for filing governmental claims, the debtors and other interested parties could either accept it or object to it on the basis that it was untimely. *In re Gordian Medical, Inc.*, 499 B.R. 793, 799 (Bankr. C.D. Cal. 2013) ("When a proof of claim is untimely filed, a debtor has the option to either accept it as filed or to contest it via a claim objection on grounds of untimely filing."). Until the objection to FTB's claim was filed, FTB's claim was deemed allowed. 11 U.S.C. § 502(a) ("A claim . . ., proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."); *In re Jensen*, 232 B.R 118, 120 (Bankr. N.D. Ind. 1999) ("even late claims are deemed allowed unless objected to"). Thus, until an objection to the Claim was filed, no reason existed for FTB to request this Court to deem the Claim to have been timely filed and FTB should not have done so. *Id.* (dismissing as moot a motion to allow a late claim before an objection was filed).

debtors must amend the Plan to either (1) allow FTB to collect on that portion of its nondischargeable claim that will not be paid in full under the Plan, or (2) provide for full payment under the Plan of FTB's nondischargeable claim.

Second, even if FTB does not have an allowed claim in this case, it is still entitled to the protections of Bankruptcy Code § 1129(a)(7), which requires that FTB receive under the plan on account of its claim "property of a value, as of the effective date of the plan, that is not less than the amount that [FTB] would so receive . . . if [the debtors] were liquidated under chapter 7 on such date." There is $35,400 available to pay priority claimants in a Chapter 7 case. Thus, because FTB retains its priority in a Chapter 7 case even if its claim is untimely (11 U.S.C. § 726(a)(1)), FTB must be paid $33,272.79 ($35,400 less the timely $2,127.21 priority FTB claim) on its late priority claim in order for the plan to satisfy Bankruptcy Code §1129(a)(7).

## CONCLUSION

For the reasons set forth above, FTB respectfully requests that the Court issue an order deeming FTB's Claim 16-3 as timely filed on the ground of excusable neglect.

Dated: June 6, 2014

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
JOYCE E. HEE
Supervising Deputy Attorney General


/s/
DAVID LEW
Deputy Attorney General
*Attorneys for Creditor California Franchise Tax Board*

OK2014902366
90407299.doc