## United States Bankruptcy Court
## Northern District of California

In re:                                    Case No. 10-59336 TEC
**Gregory Thomas Malley**
**and**
**Vanisri Malley**                        Chapter 11

_____/

### COMBINED PLAN OF REORGANIZATION
### AND APPROVED DISCLOSURE STATEMENT
### December 30, 2015

**INTRODUCTION**

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 10% of their allowed claims) in two lump sums, one-half payable within 12 months from the Effective Date of the Plan, and the balance within 24 months of the Effective Date of the Plan. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than November 24, 2015. The court will hold a hearing on confirmation of the Plan on February 11, 2016 at 9:30 a.m..

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows Debtor's monthly income and expenses. Exhibit 4 describes how much

Debtor is required to pay on the effective date of the plan. Exhibit 5 shows Debtor's monthly income and expenses related to each investment property.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan, except for payments on tax debts, constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Creditors' Rights Remain Unchanged.**

| Class | Name of Creditor | Description of Collateral |
|-------|------------------|---------------------------|
| 1A | Cathy Bank | first deed of trust on 1050 Sherwood Avenue, San Jose, CA 95126 |
| | | |

These creditors' legal, equitable, and contractual rights remain unchanged with respect to the above collateral. The confirmation order will constitute an order for relief from stay. Creditors in these classes shall retain their interest in the collateral until paid in full. **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**

**Debtors to Make Regular Payments and Pay Arrears Over Time.**

| Class | Name of Creditor | Collateral | Regular Monthly Payment | Estimated Arrears | Interest Rate on Arrears | Monthly Payment on Arrears |
|-------|------------------|------------|-------------------------|-------------------|--------------------------|----------------------------|
| 1B | East West Bank | First deed of trust on 52 Cleveland 95128 | 2,980 | 30,000 | 0 | 400.00 |
| 1BB | Wells Fargo Bank, N.A. | First Deed of trust on 24303 Elise Court, Los Altos, CA 94024 | 9,213.26 (PITI) (based on variable rate) | 411,171 | 0 | 5,811.09 |

   **EAST WEST BANK:**  Debtors incorporate herein by reference
the Stipulation for Treatment of East West Bank, filed herein on
March 13, 2014, as Docket No. 228.  In pertinent part it
provides that Debtor will pay the entire amount contractually
due by making all post-confirmation regular monthly payments,
and by paying all pre-confirmation arrears (including attorneys
fees and late charges) with no interest **on a 75 month equal payment
schedule [$400 a month at the estimated $30,000 in arrears], with a final balloon payment,
due on the 60th month, of any  and all remaining pre-confirmation arrearage amounts
owed.**  The payments will be due the 30th day of the month,
starting 30 days after the Effective Date of the Plan on the
above secured claims.  To the extent arrears are determined to
be other than as shown above, appropriate adjustments will be
made in the number of payments, subject to the balloon payment
of any and all remaining pre-confirmation arrearage amounts
being due on the 60th month.
   **WELLS FARGO BANK:  Debtors incorporate herein by reference
a stipulation to be entered into between the parties.  In
summary,** Debtors will pay the entire amount contractually due by
making all post-confirmation regular monthly payments, and by
paying all pre-confirmation arrears(including attorneys fees and
late charges) with no interest **in 72 equal monthly payments.
Debtors have not verified the amount of arrears stated, and they
reserve the right to dispute this claim.**
 Creditors in these classes shall retain their interest in the
collateral until paid in full.

   Creditors in these classes may not repossess or dispose of
their collateral so long as Debtor is not in material default

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
December 30, 2015                    3

under the Plan (defined in Part 6(c)).  **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

**Debtors to Strip Lien to Value of Collateral and Pay Over Time.**

| Class | Name of Creditor | Collateral | Value | Interest Rate | Monthly Payment |
|-------|------------------|------------|-------|---------------|-----------------|
| 1L | Internal Revenue Service "IRS" Claim 7 for 372,637.15 | All real and Personal property | 47,300 | 3% | Lump sum May 7, 2016, unless dispute unresolved |

Debtors contend that the value of the collateral is less than the amount of the claim.  Debtors obtained an order from the court determining the value of the above real property collateral.  With regard to the personal property lien, Debtors, on November 23, 2015, entered into a Stipulation with IRS.  That Stipulation is incorporated herein by reference.  The pertinent part of the Stipulation is summarized above.  The personal property lien of IRS covers all of the assets identified in Debtors' Schedule B, filed herein, and specifically extends to Debtors' interest in any of the various entities referred to therein.  Full payment will be due by May 7, 2016, unless the pending dispute with IRS is unresolved, in which case, Debtors will set aside the amount allocated to IRS.  Any remaining amount due is a general unsecured claim treated in Part 2. Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply.  **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge.  The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**Debtors to Adjust Terms and Pay Amount Due in Full Over Time.**

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|-------|------------------|------------|------------|---------------|-----------------|------|
| 1k | Wells Fargo Bank, N.A. (Claim 26 for $110,408.54) | Second deed of trust on 62 Cleveland Avenue, San Jose, CA | 153,040.9 | 5.0% | 1,560.5 | 7 years |
| 1F | Prime Retail, Inc. (Claim 27 for 67,769.29) | Third deed of trust on 52 Cleveland Avenue, San Jose, CA | 67,769.29 | 12.0% | 0 | 1 year |
| 1D | Wells Fargo Bank, N.A. (Claim 13 for $513,987) | Second deed of trust on 24303 Elise Court, Los Altos, CA 94024 | 502,592.0 | 4% | 2,400.5 | 7 years |

CLASS 1k:  Debtors will pay the entire amount contractually due with interest through 84 equal monthly payments, due the First day of the month, starting 30 days after the Effective Date of the Plan on the above secured claim.  Any unpaid balance shall be paid in full by the 84th month.  Debtors have not verified the amount claimed owing, and they reserve their right to dispute it.

CLASS 1D:  Debtors incorporate herein by reference the Stipulation entered into between the parties, the pertinent parts of which are summarized above. Payments will commence on January 1, 2016.

Class 1F is subject to a pending claim objection as to the amount owed. The security interest of Prime Retail, Inc. was ordered valued at zero, and the claim treated as unsecured; however, Debtors are now allowing it as fully secured from and after the Effective Date of the Plan.  The allowed amount of this claim will be paid within one year after the Effective Date of the Plan.

Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a). [Other] General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Lump sum Payment |
|---|---|---|---|---|
| A Tool Shed | 533.00 | N | 54 | 54 |
| Addison Avenue Credit Union | 1,397.00 | Y | 140 | 140 |
| American Centurion Bank (Claim No. 9) | 2,582.97 | N | 259 | 259 |
| American Centurion Bank (Claim No. 10) | 16,644.69 | N | 1,665 | 1,665 |
| American Centurion Bank (Claim No. 14) | 784.64 | N | 785 | 785 |
| American Centurion Bank (Claim No. 22) | 9,228.35 | N | 923 | 923 |
| Bank of America | 12,705.00 | N | 1,271 | 1,271 |
| California Water Service Company | 444.00 | N | 45 | 45 |
| Capital One Bank | 8,953.50 | N | 894 | 894 |
| B-Line (Chase Claim No. 17) | 33,827.70 | N | 3,383 | 3,383 |
| B-Line (Chase Claim No. 18) | 1,632.70 | N | 164 | 164 |
| B-Line (Chase Claim No. 19) | 1,130.86 | N | 113 | 113 |
| CIG Financial | 107.00 | N | 11 | 11 |
| Comcast-Mountain View | 198.00 | N | 20 | 20 |
| City of Santa Clara | 22,900 | Y | 2,290 | 2,290 |
| Debbie McDaniel | 41,318.63 | Y | 4,132 | 4,132 |

Case: 10-59336   Doc# 337   Filed: 12/30/15   Entered: 12/30/15 18:32:24   Page 6 of 25

| | | | | |
|---|---|---|---|---|
| Discover Bank | 38,709.24 | N | 3,871 | 3,871 |
| Emtrust Administration | 312.00 | N | 32 | 32 |
| Groom & Cave | 41,067.95 | Y | 4,107 | 4,107 |
| John Marshall Collins, esq. | 12,366.22 | N | 1,237 | 1,237 |
| Kaiser Permanente | 670.00 | N | 67 | 67 |
| Khalsa McBrearty Accountancy, LLP | 2,110.00 | Y | 211 | 211 |
| Law Enforcement Systems | 74.00 | N | 8 | 8 |
| MBA Architects | 9006.67 | Y | 901 | 901 |
| Target National Bank | 277.00 | N | 28 | 28 |
| Technology Credit Union | 71,079.00 | N | 7,108` | 7,108 |
| The Harker School | 3,520.76 | N | 352 | 352 |
| United Commercial Bank | 12,436.00 | Y | 1,244 | 1,244 |
| Wells Fargo Bank (Claim No. 2) | 9,298.47 | Y | 930 | 930 |
| Wells Fargo Bank (Claim No. 3) | 24,699.54 | N | 2,470 | 2,470 |
| Wells Fargo Bank (Claim No. 4) | 10,315.46 | Y | 1,032 | 1,032 |
| Wells Fargo Bank (Claim No. 5) | 9222.98 | N | 923 | 923 |
| Wells Fargo Bank (Claim No. 6) | 32,794.85 | Y | 3,280 | 3,280 |
| Wells Fargo Bank (Claim No. 21) | 2,017.34 | N | 202 | 202 |
| Internal Revenue Service | 372,637.15 | Y | 37,263 | 37,264 |
| | | y | | |
| . | | Y | | |
| Wells Fargo Bank, N.A.(claim No. 13) | 11,395.63 | N | 1,140 | 1,140 |
| Franchise Tax Board | 28,163.75 | Y | 2,816.40 | 2,816.40 |

Allowed claims of general unsecured creditors [not treated as small claims] (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Percent Plan.** Creditors will receive 10 percent of their allowed claim in 2 installments, due one-half within 12

months of the Effective Date of the Plan, and the balance within 24 months of the Effective Date of the Plan.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.


**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a)    Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
| --- | --- |
| Stanley Zlotoff | 20,000 |
|  |  |

The following professionals have agreed to accept payment over time as follows.  Payments will be made [monthly/ quarterly], due on the [number] day of the [month/quarter], starting [month & year] or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
| --- | --- | --- | --- |
| n/a |  |  |  |
|  |  |  |  |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)    Other Administrative Claims.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when

Case: 10-59336   Doc# 337   Filed: 12/30/15   Entered: 12/30/15 18:32:24   Page 8 of 25

due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| none | |
| | |

(c) <u>Tax Claims</u>. Debtors will pay allowed claims entitled to priority under section 507(a)(2)&(8), owed to **Santa Clara County Tax Collector** in full **on or before May 7, 2016. Debtors** will pay allowed claims entitled to priority under section 507(a)(8), owed to **Franchise Tax Board in one lump sum on or before May 7, 2016** over time with interest (at the non-bankruptcy statutory interest rate) in accordance with section 511 of the Bankruptcy Code. Debtors believe that these tax claimants have consented to this treatment. A copy of the express acceptance by the County of Santa Clara was filed herein on November 30, 2015.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Franchise Tax Board | 145,993 | 4.00 | Subject to dispute | 1 |
| Santa Clara County Tax Collector as to 52 Cleveland Ave., San Jose, CA 95128 | 11,416 | 18.0 | 35,554.07 | 1 |
| Santa Clara County Tax Collector as to 24303 Elise Court, Los Altos, CA 94024 | 20,810** (Debtors believe this has been paid) | 18.0 | 0 | 1 |
| Santa Clara County Tax Collector as to 1050 Sherwood Avenue, San Jose, CA 95126 | 19,144.33 | 18.0 | 22,263.17 | 1 |

| | | | | |
|---|---|---|---|---|
| The Harker School | 2,500(Disputed, as no basis for priority) | 0.00 | 100.00 | 25 |

## PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears will be paid [select one] [in full on the Effective Date] in [number] equal [monthly/quarterly] installments beginning on the first day of [month & year].

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| n/a | | | | |
| | | | | |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| n/a | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed assumed.

## PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

(a) <u>Discharge</u>. Debtors shall not receive a discharge of debts until Debtors have paid all payments due to FTB under the Plan and the dividend provided to the Class 2 unsecured creditors, or the court grants a hardship discharge.

(b) <u>Vesting of Property</u>.  On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) <u>Plan Creates New Obligations</u>.  Except as provided in Part 6(d) and (e), the obligations to creditors, except for payments on  priority tax debts that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.  Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.  Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>.  Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If

Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d)  Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e)  Claims not Affected by Plan.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f)  Effect of Conversion to Chapter 7.  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g)  Retention of Jurisdiction.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.


**PART 7: GENERAL PROVISIONS**
(a)  Effective Date of Plan.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been

filed.  If a notice of appeal has been filed, Debtor may waive
the finality requirement and put the Plan into effect, unless
the order confirming the Plan has been stayed.  If a stay of the
confirmation order has been issued, the Effective Date will be
the first day after that date on which no stay of the
confirmation order is in effect, provided that the confirmation
order has not been vacated.

(b)  <u>Disputed Claim Reserve</u>.  Debtor will create a reserve for
disputed claims.  Each time Debtor makes a distribution to the
holders of allowed claims, Debtor will place into a reserve the
amount that would have been distributed to the holders of
disputed claims if such claims had been allowed in the full
amount claimed.  If a disputed claim becomes an allowed claim,
Debtor shall immediately distribute to the claimant from the
reserve an amount equal to all distributions due to date under
the plan calculated using the amount of the allowed claim.  Any
funds no longer needed in reserve shall be [select one]
[returned to Debtor] [distributed pro-rata among allowed claims
in this class].

(c)  <u>Cramdown</u>.  Pursuant to section 1129(b) of the Bankruptcy
Code, Debtor reserves the right to seek confirmation of the Plan
despite the rejection of the Plan by one or more classes of
creditors.

(d)  <u>Severability</u>.  If any provision in the Plan is determined
to be unenforceable, the determination will in no way limit or
affect the enforceability and operative effect of any other
provision of the Plan.

(e)  <u>Governing Law</u>.  Except to the extent a federal rule of
decision or procedure applies, the laws of the State of
California govern the Plan.

(f)  <u>Lawsuits</u>.

    Debtor believes that causes of action for fraudulent
transfers, voidable preferences, or other claims for relief
exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|-------|--------------|-----------------|-----------------|-----------------------------------|
|       |              |                 |                 |                                   |

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Nara Bank | Y | Avoidance of judicial lien recorded post-petition | 200,000 | Y |
| Edward Moulder and others regarding Roatan venture | N | Breach of contract, accounting, etc. | unknown | unknown |
| Richard Kinsel, DDS and Robert Lamb, DDS | N | Malpractice | Unknown | Y |
| Prime Retail, Inc. | Y | Negligence, breach of fiduciary duty, breach of contract, usury | Unknown | Y |

(g)  Notices.  Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

Gregory Malley
24303 Elise Ct.
Los Altos, CA  94024

Vanisri Malley
2250 El Camino Real
Santa Clara, CA  95050

(h)  Post-Confirmation United States Trustee Fees.  Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6).  So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i)  Deadline for § 1111(b) Election.  Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j)  Unclaimed dividends.  Any check to a creditor un-cashed for

thirty days shall be voided.  Any unclaimed funds remaining at
discharge shall be returned to Debtors.
(k) Notwithstanding any other provision in this Plan, this Plan
does not enjoin the collection of nondischargeable debts, except
to the extent the Plan provides for full payment of those debts.


Dated: 12/30/2015


                              /s/Gregory Thomas Malley
                               Debtor


                              /s/Stanley Zlotoff
                               Attorney for Debtor

Case: 10-59336   Doc# 337   Filed: 12/30/15   Entered: 12/30/15 18:32:24   Page 15 of
                                   25

**Attorney Certification**

I, Stanley Zlotoff, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

Part 1 regarding Classes 1B and 1BB in the section titled "Debtors to Make Regular Payments and Pay Arrears Over Time"

Part 1 regarding Class 1L in the section titled "Debtors to Strip Lien to Value of Collateral and Pay Over Time"

Part 1 regarding Class 1K, 1F, and 1D in the section titled "Debtors to Adjust Terms and Pay Amount Due in Full Over Time."

Part 2 regarding "Treatment of General Unsecured Creditors.

Part 5(a) was changed

Part 7(j) was added

Page 2, in the paragraph beginning "if the Plan is confirmed.." added "…except for priority tax debts…"

Part 5(c) added "…except for priority tax claimants…"

Part 7(k) was added.

Part 3(c) "Tax Claims" was changed to "507(a)(2)&(8)"

At Part 3(c), the following language regarding tax claims was deleted:  "…in equal amortizing payments...," and  "Payments will be made monthly, due on the First day of the month, starting the calendar month next following the Effective Date of the Plan.  To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments."


I declare that the foregoing is true and correct.  Executed this 30th day of December, 2015.

     /s/Stanley Zlotoff
     Attorney for Debtor(s)

Case: 10-59336   Doc# 337   Filed: 12/30/15   Entered: 12/30/15 18:32:24   Page 16 of 25

**Exhibit 1 - Events That Led To Bankruptcy**

This case was triggered by an imminent trustee's sale of the Debtors' Los Altos property.

Among the assets of Debtors at commencement of the case were the following:

1. Debtors' ownership interest in Nobel Group, Inc.("Nobel"). Nobel was a wholly owned corporation that filed its own Chapter 11, Case No. 10-55902 ASW. It achieved plan confirmation pursuant to which it sold its two main assets, a bowling alley, known as Homestead Lanes that sold for $305,000, and real property located at 2585 El Camino Real ("2585")Santa Clara, California that was to be sold for 6.1 million. Debtors had expected to receive a disbursement on account of their equity interest; however, it did not happen. The Nobel Chapter 11 case was recently closed.

2. 2585 ECR, LLC was an entity set up by Debtors to assist with the management of the 2585 property. This entity has no other assets and no value.

3. Nobel Real Estate, Inc. consists of Debtor Gregory Malley's ("Gregory") real estate brokerage license. This entity has no agents or assets.

4. El Camino Condo and Townhome, LLC was formed by Debtors with the expectation that it might develop the real property located at 2250 El Camino Real, Santa Clara, California. That did not happen. The property is owned by Green Valley Corporation, an entity unrelated to Debtors, and the motel situated thereon is managed by Debtor Vanisri Malley ("Vanisri"). No value is assigned to this entity.

5. The claim for misrepresentation against the seller of the Sherwood property was not pursued, and it is too late to do so.

6. The liquor license was sold during the case for the sum of $10,000.

7. The real estate development in Roatan, Honduras consisted of Debtors in association with another individual who had set up a Honduran corporate entity for the purpose of constructing seven four-plexes. Debtors are informed and believe that the construction was completed, but no profits will be received due to expenses and carrying costs. Debtors are investigating this situation to determine whether their associate properly accounted for investment funds. Litigation may ensue.

8. Single family residence at 24303 Elise Court, Los Altos, California("Elise"). Elise was a rental when the case was commenced, but now it is the residence of debtor Gregory Malley("Gregory"). A profile of Elise is set forth below in Exhibit 2.

8. Six unit apartment building located at 52 Cleveland Avenue, San Jose, California("Cleveland").  Cleveland is a rental, and its profile is set forth in Exhibits 2 and 5, below.
9. Two-thirds of an ownership in a three unit residence at 1050 Sherwood Avenue, San Jose, California("Sherwood").  The other one-third owner resides in Sherwood, and the other part of it is rented out.  A profile of Sherwood is set forth in Exhibits 2 and 5 below.


EVENTS DURING THE CASE:

Debtors obtained an order on March 10, 2014, valuing the security interests of Wells Fargo Bank as to its security interest in Elise. Debtors obtained stipulated orders on June 20, 2013, with the Internal Revenue Service("IRS") regarding its tax lien interest in all three real properties.  Debtors obtained orders on May 20 and May 21, 2013, valuing the secured interest of Nara Bank and Prime Retail, Inc. as to Cleveland.

Gregory and Vanisri divorced during the case.  Vanisri resides in and manages the motel at 2250 El Camino Real, Santa Clara, California, in exchange for which she is not obligated for rent and other living expenses.  Vanisri has primary custody of the children, and has no surplus income.

Gregory re-married; and his new wife, Michelle, is employed as a manager of Homestead Lanes.  Her salary is $6,750 per month. After payroll deductions and personal expenses, she has an extra $4,000 per month left over to assist Gregory with payments on Elise.

On January 17, 2014, Debtors filed an original Plan, and noticed it out a hearing on adequacy of disclosures.  Just prior to the hearing, the Franchise Tax Board("FTB") amended its claim, increasing it from $4,100 to $145,600.  Debtors objected to the claim, and the FTB moved for its allowance.  Debtor responded, but the parties determined that it would be more efficient to permit Debtors to file amended returns.  After several months, the FTB declined to allow the returns unless Debtors could provide substantiation for information stated in the returns. Debtors believed that if they were able to convince the IRS to consent to a reduction of its claim with regard to the tax years at issue with FTB, FTB might also reduce its claim.  Thereupon, Debtors filed an objection to the claim of IRS.  Both of these matters are pending.


Means for execution of the Plan.

Gregory  will continue acting as a real estate broker and developer.  Vanisri  will continue managing the motel at 2285 El Camino Real.

Debtors have been filing monthly operating reports("MORS), and a review of MORS filed over the last six months shows an average income of $14,000. Average rental income over the same six months has been an average of $8,847 per month; however, the June 2015 MOR indicates a rental increase, such that, going forward, rents per month should be $9,240.

Michelle will contribute $4,000 per month. In addition, Michelle, through her savings, was able to partake in a real estate investment that by March 2016, is expected to result in a payout to her in excess of $650,000. She is committed to applying this recovery to Plan payments (see Exhibit 3 C-E below).

In addition, Debtors expect, based on past performance that within the next 24 months Gregory will enjoy at least one commission or real property development dividend in an amount in excess of $100,000.

In the event of failure of Debtors to realize the funding sufficient to properly carry out the provisions of the Plan, the case would be converted to Chapter 7.

**Exhibit 2 – What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 24303 Elise Court, Los Altos, CA 94024

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 1,950,000 | 1st 1,658,390 | 110,000 | | | 0 |
| | 2nd 513,987 | | | | |
| | 3rd 372,535 | | | | |

Real Property #2: 52 Cleveland Avenue, San Jose, CA 95128

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 750,000 | 1st 555,544 | 37,500 | 8,000 | | 0 |
| | 2nd 110,408 | | | | |
| | 3rd 67,769.29 | | | | |
| | 4th 372,535 | | | | |

Real Property #3: 1050 Sherwood Avenue, San Jose, CA 95126 (2/3 interest)

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| 400,000 | 1st 406,310 | 30,000 | 6,500 | | 0 |
| | 2nd 372,535 | | | | |
| | 3rd | | | | |

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash including bank accounts(income from personal services; likely not property of estate upon conversion) | 35,000** | | 11,600 | 23,400 |

Case: 10-59336   Doc# 337   Filed: 12/30/15   Entered: 12/30/15 18:32:24   Page 20 of 25

| | | | | |
|---|---|---|---|---|
| Automobile #1<br>2002 Honda Odyssey | 4,000 | | 4,000 | |
| Automobile #2<br>1995 Toyota Camry | 2,000 | | 2000 | 0 |
| Household Furnishings | 2,800 | | 2,800 | 0 |
| Jewelry | 8,000 | | 8,000 | 0 |
| Equipment | | | | |
| Stocks / Investments<br>Fidelity IRA | 3,700 | | 3,700 | 0 |
| Nobel Group, Inc. | | | | |
| El Camino Condo and<br>Townhome, LLC | | | | |
| Nobel Real Estate, Inc. | | | | |
| 2585 | | | | |
| Roatan, Honduras<br>investment | | | | |
| Other Personal Property<br>Books, clothing,<br>bicycles, animals | 3,100 | | 3,100 | 0 |
| Claim for<br>misrepresentation | | | | |
| TOTAL | | | | 23,400 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | 23,400 |
| Recovery from Preferences / Fraudulent Conveyances        [ADD] | |
| Chapter 7 Administrative Claims                      [SUBTRACT] | |
| Chapter 11 Administrative Claims                     [SUBTRACT] | 10,000 |
| Priority Claims                                      [SUBTRACT] | 4,100 |
| Chapter 7 Trustee Fees                               [SUBTRACT] | 3,090 |
| Chapter 7 Trustee's Professionals                    [SUBTRACT] | |
| NET FUNDS AVAILABLE FOR DISTRIBURTION TO UNSECURED CREDITORS | 6,210 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 787,864 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 10% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 1% |

**Exhibit 3 - Monthly Income and Expenses**

Individual Chapter 11
Combined Plan & Disclosure Statement                    (Version: 7/30/12)
December 30, 2015                    21

| Income | Amount |
|---|---|
| Gross Employment Income | 14,000 |
| Gross Business Income | |
| [OTHER INCOME - DESCRIBE]Contribution by Michelle | 4,000 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | 257 |
| **A. Total Monthly Income** | 18,257 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | |
| Retirement Contributions (401k, IRA, PSP) | |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities)*<br>(Total Arrearages on Principal Residence are $__418,398_____) | 11,613 |
| Household Expenses including shelter and food | 1,300 |
| Transportation Expenses (car payments, insurance, fuel) | |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | 2,040 |
| Alimony / Child Support | |
| Other Expenses (administrative, capital expenses, business development) | 1,880 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | 100 |
| **B. Total Monthly Expenses** | 16,933 |

| | Amount |
|---|---|
| **C. Disposable Income** (Line A - Line B)x 12 months=1,324x12 | 15,888 |
| **Michelle's lump sum from investment** | 650,000 |

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | |
| Priority Claims | 146,000 |
| General Unsecured Creditors | 39,394 |
| Property tax arrears | 51,370 |
| Internal Revenue secured claim | 47,300 |

Case: 10-59336   Doc# 337   Filed: 12/30/15   Entered: 12/30/15 18:32:24   Page 22 of
25

| | |
|---|---|
| Class 1BB secured arrears due first 12 months | 69,732 |
| Prime Retail, Inc. | 67,769 |
| **D. Total Plan Payments due by first year** | 421,565 |

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | 244,323<br>plus<br>$15,888<br>per year |

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

| | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date | | 35,000 |
|    Payments on Effective Date | | |
|      Unclassified Claims | | |
|      Administrative Expense Claims | | |
|      Priority Claims | | |
|      Small Claims (Class 2(a)) | | |
|      U.S. Trustee Fees | | |
| B. Total Payments on Effective Date | | 0 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | | 35,000 |

Individual Chapter 11
Combined Plan & Disclosure Statement           (Version: 7/30/12)
December 30, 2015       24

Case: 10-59336    Doc# 337    Filed: 12/30/15    Entered: 12/30/15 18:32:24    Page 24 of 25

**Exhibit 5 - Investment Property Analysis**

**Properties with Positive Monthly Cash-Flow:**
Real Property #1 Income: 1050 Sherwood Ave., San Jose, CA

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 3,400 | 1st 2,433 | 65 | 645 | | 257 |
| | 2nd | | | | |
| | 3rd | | | | |

[Add additional tables for additional real property]

Real Property #2 Income: 52 Cleveland Ave., San Jose, CA

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

| A. Total Positive Cash Flow | 257 |
|---|---|

**Properties with Negative Monthly Cash-Flow:**
Real Property #3 Income:  52 Cleveland Ave., San Jose, CA

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| 5,840 | 1st 3,380 | 120 | 880 | | -100 |
| | 2nd 1,560 | | | | |
| | 3rd | | | | |

Real Property #4 Income:

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

| B. Total Negative Cash Flow | 100 |
|---|---|